| | |
|---|---|
| 1 | Rebecca S. Glos, Esq. (SBN 210396) |
| 2 | rglos@watttieder.com<br>Kyle S. Case, Esq. (SBN 323653) |
| 3 | kcase@watttieder.com<br>Watt, Tieder, Hoffar & Fitzgerald, L.L.P. |
| 4 | 4 Park Plaza, Suite 1000<br>Irvine, CA  92614 |
| 5 | Telephone:   949-852-6700<br>Facsimile:    949-688-2139 |
| 6 | Attorneys for Plaintiff |
| 7 | TRAVELERS CASUALTY AND SURETY<br>COMPANY OF AMERICA |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | | |
|---|---|---|
| 11 | TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, | Case No.  2:23-cv-06301-HDV-AGR |
| 12 | a Connecticut corporation, | **TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT** |
| 13 | Plaintiff, | |
| 14 | v. | |
| 15 | JOKAKE CONSTRUCTION SERVICES, INC., an Arizona corporation; and DOES 1 through 100 | |
| 16 | | |
| 17 | Defendants. | (*Filed Concurrently Herewith: Notice of Application and Hearing; Application for Right to Attach Order; Declaration of Marc Brown; and Declaration of Steven Padula*) |
| 18 | | |
| 19 | | **Hearing** |
| 20 | | Date:     12/14/2023<br>Time:     10:00 a.m.<br>Crtrm:    5B |
| 21 | | |
| 22 | | |
| 23 | | Complaint Filed: August 3, 2023 |

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT**

# TABLE OF CONTENTS

**Page No.**

I.  INTRODUCTION ............................................................................................. 5
II. STATEMENT OF FACTS ............................................................................... 5
    A.    Indemnity Agreement and Bond ............................................................. 5
    B.    Jokake's Termination and Claims on the Bonds ................................... 8
    C.    First Collateral Demand .......................................................................... 8
    D.    Takeover and Completion Agreements .................................................. 9
    E.    Second Collateral Demand ..................................................................... 9
    F.    Status of Project Completion ................................................................ 10
    G.    Travelers' Actual and Anticipated Losses ............................................ 10
III. FEDERAL LAW AUTHORIZES THE USE OF PROVISIONAL REMEDIES THAT ARE PROVIDED FOR BY THE LAW OF THE STATE IN WHICH THE DISTRICT COURT IS LOCATED. ............ 12
IV. TRAVELERS IS ENTITLED TO OBTAIN THE RIGHT TO ATTACH ORDER AND A WRIT OF ATTACHMENT AGAINST JOKAKE ................................................................................. 13
    A.    The Claim Upon Which Travelers Seeks Attachment Is Based Upon One For Which An Attachment May Be Issued ......... 13
        1.    Travelers' Claim Is A Claim For A Fixed Amount Of Money Greater Than $500 That Is Based On An Express Contract ................................................................. 13
        2.    Travelers' Claim Is An Unsecured Commercial Claim ............ 14
    B.    Travelers Has Established The Probably Validity Of The Claim Upon Which The Attachment Is Based ............................. 14
        1.    It Is More Likely That Not That Travelers Will Obtain A Judgment Against Jokake On Its Claim ...................... 15
        2.    Travelers' Claim Is One On Which Attachment Is Proper ......... 16
        3.    Attachment Is Proper Under The Doctrine of *Quia Timet* ......... 18
    C.    The Attachment Is Not Sought For A Purpose Other Than The Recovery On The Claim Upon Which The Attachment Is Based ......................................................................... 19
    D.    Travelers' Claim Is For An Amount Greater Than Zero ..................... 19
V.  THE PROPERTY UPON WHICH TRAVELERS REQUESTS ATTACHMENT IS PROPERLY ATTACHABLE ..................................... 19
VI. CONCLUSION .............................................................................................. 20

# TABLE OF AUTHORITIES

**Page No.**

**Cases**

*Amwest Surety Ins. Co. v. Patriot Homes, Inc.*
(2005) 135 Cal.App.4th 82 .................................................................... 15

*Escrow Agents' Fidelity Corp. v. Superior Court*
(1992) 4 Cal. App. 4th 491 .................................................................... 18

*Fidelity and Deposit Co. v. Whitson*
(1960) 187 Cal.App.2d 751 .............................................................. 15, 17

*General Ins. Co. of America v. Howard Hampton, Inc.*
(1960) 185 Cal.App.2d 426 ........................................................ 15, 16, 17

*General Insur. Co. v. Singleton*
(1974) 40 Cal. App. 3d 439 .................................................................... 15

*Lorber Industries of Calif. v. Turbulence, Inc.*
(1985) 175 Cal.App.3d 532 .................................................................... 12

*Western Steel & Ship Repair v. RMI, Inc.*
(1986) 176 Cal.App.3d 1108 .................................................................. 13

**Statutes**

*California Code of Civil Procedure*
Section 481.190 ...................................................................................... 14
Section 483.010 ................................................................................ 13, 14
Section 484.010 ...................................................................................... 12
Section 484.020 ...................................................................................... 19
Section 484.090 ................................................................................ 13, 19
Section 487.010 ...................................................................................... 20
Section 487.020 ...................................................................................... 20
Section 488.080 ................................................................................ 19, 20
Section 491.410 ...................................................................................... 19

**Federal Cases**

*Com'l Ins. Co. of Newark v. Pacific-Peru Constr. Corp.*
(9th Cir. 1977) 558 F.2d 948 ................................................................. 15

*Granny Goose Foods, Inc. v Brotherhood of Teamsters and Auto Truck Drivers Local No. 70*
(1974) 415 U.S. 423 ............................................................................... 12

*Reebok Int'l Ltd. v. Marnatech Enterprises, Inc.*
(9th Cir. 1992) 970 F.2d 552 ................................................................. 12

*Safeco Ins. Co. of America v. Schwab*
(9th Cir. 1984) 739 F.2d 431 ............................................................ 15, 16

# TABLE OF AUTHORITIES
## (Continued)

**Page No.**

**Federal Statutes**

*Federal Rules of Civil Procedure*
  Rule 64 ................................................................................................................12

Plaintiff Travelers Casualty and Surety Company of America ("Travelers") respectfully submits the following Memorandum of Points and Authorities in support of its application for a Right to Attach Order and Order for Issuance of Writ of Attachment against Defendant Jokake Construction Services, Inc. ("Jokake" or "Indemnitor").

## I. INTRODUCTION

By this Application, Travelers respectfully requests that this Court issue a Right to Attach Order and Order for Writ of Attachment, in the amount of $25,000,000.00 to cover the current and potential losses under the performance and payment bonds Travelers issued for Jokake on a private works construction project.

By way of a General Agreement of Indemnity, Jokake agreed to, among other things, (1) reimburse Travelers for its losses from having issued the bonds and (2) post collateral upon Travelers' demand to cover any actual or potential loss. To date, Travelers has actual losses of $7,240,057.00 and anticipated losses in excess of $31,000,000.00 on the project.

Despite written demands, Jokake has failed to post collateral and/or reimburse Travelers its existing and potential losses in material breach of the General Agreement of Indemnity. Now, Travelers fears that Jokake will abscond with and transfer assets to avoid its obligations under the General Agreement of Indemnity.

As such, Travelers seeks a writ of attachment against Jokake to attach any and all assets in the amount of $25,000,000.00, which is the total sum of the collateral demanded but unposted to date.

## II. STATEMENT OF FACTS

### A. Indemnity Agreement and Bond

On or about October 3, 2016, Jokake executed a General Agreement of Indemnity ("GAI") in favor of Travelers. (See Declaration of Marc Brown ("Brown Decl.") ¶ 7, Ex. A) Under the terms of the GAI, Jokake must indemnify and hold

harmless Travelers from any and all loss and expense incurred in connection with Travelers' issuance of any bond on behalf of Jokake. The GAI states, in pertinent part:

> **3. Indemnification and Hold Harmless**: Indemnitors shall exonerate, indemnify and save Company harmless from and against all Loss. An itemized, sworn statement by an employee of Company, or other evidence of payment, shall be prima facie evidence of the propriety, amount and existence of Indemnitors' liability. Amounts due to Company shall be payable upon demand.
>
> **5. Collateral Security**: Indemnitors agree to deposit with Company, upon demand, an amount as determined by Company sufficient to discharge any Loss or anticipated Loss. Indemnitors further agree to deposit with Company, upon demand, an amount equal to the value of any assets or Contract funds improperly diverted by any Indemnitor. Sums deposited with Company pursuant to this paragraph may be used by Company to pay such claim or be held by Company as collateral security against any Loss or unpaid premium on any Bond. Company shall have no duty to invest, or provide interest on, the deposit. Indemnitors agree that Company would suffer irreparable damage and would not have an adequate remedy at law if Indemnitors fail to comply with the provisions of this paragraph.
>
> **6. Remedies:** In the event of a Default […] Company shall have the right to […] (c) assert or prosecute any right or claim in the name of any Indemnitor and to settle any such right or claim as Company sees fit; (d) execute in the name of any Indemnitor, any instruments deemed necessary or desirable by Company to: (i) provide Company with title to assets, (ii) take immediate possession of Contracts funds whether earned or unearned, (iii) collect such sums as may be due Indemnitors and to endorse in the name of Indemnitors and (iv) collect on any negotiable instruments […] (f) be subrogated to all the rights, remedies, properties, funds, securities and receivables relating to Indemnitors' Contracts or contracts and have the right to offset losses on any Contract or Bond against proceeds, funds, or property due from another Contract, bond or contract. Further, in the event of Default and upon demand Indemnitors shall direct that all payments, monies, and properties that are due or may become due on any Contract or contract be made payable to, and/or sent directly to, Company, […]
>
> **9. Trust Fund:** All payments due or received for or on account of any Contract, whether or not in the possession

of any Indemnitor, shall be held in trust as trust funds by Indemnitors for the benefit and payment of all obligations for which Company as beneficiary may be liable under any Bond. Company may open a trust account or accounts with a bank for the deposit of the trust funds. Upon demand, Indemnitors shall deposit therein all trust funds received. Withdrawals from such trust accounts shall require the express consent of Company.

**10. Books, Records and Credit:** Indemnitors shall furnish upon demand, and Company shall have the right of free access to, at reasonable times, the records of Indemnitors including, but not limited to, books, papers, documents, contracts, reports, financial information, accounts and electronically stored information, for the purpose of examining and copying them. Indemnitors expressly authority Company to access their credit records, including, but not limited to, account numbers and/or account balances from financial institutions. To the extent required by law, Indemnitors, upon request, shall be informed whether or not a consumer report has been requested by Company, and if so, of the name and address of the consumer reporting agency furnishing the report.

In addition, the GAI provided the following defined terms:

**Default** – Any of the following shall constitute a Default: (a) a declaration of Contract default by any Obligee; (b) actual breach of abandonment of any Contract; (c) breach of any provision of this Agreement; (d) failure to make payment of a properly due and owing bill in connection with any Contract; (e) Company's good faith establishment of a reserve; (f) improper diversion of Contract funds or any Indemnitor's Assets to the detriment of Contract obligations; (g) any Indemnitor's becoming the subject of any proceeding or agreement of bankruptcy, receivership, insolvency, or creditor assignment, or actually becoming insolvent; (h) any Indemnitor's dying, becoming legally incompetent, being imprisoned, being convicted or a felony, or disappearing and being unable to be located; (i) any representation furnished to the Company by or on behalf of any Indemnitor proving to have been materially false or misleading when made; and/or (j) any change in control or existence of any Indemnitor. Change in control means the addition or departure of any person or entity having a ten percent (10%) or greater ownership interest in any Indemnitor.

**Loss** – All loss and expense of any kind or nature, including attorneys' and other professional fees, which Company incurs in connection with any Bond or this Agreement, including but not limited to all loss and expense incurred by reason of Company's: (a) making any investigation in connection with any Bond; (b)

prosecuting or defending any action in connection with any Bond; (c) obtaining the release of any Bond; (d) recovering or attempting to recover Property in connection with any Bond or this Agreement; (e) enforcing by litigation or otherwise any of the provisions of this Agreement; and (f) all interest accruing thereon at the maximum legal rate.

On or around April 18, 2017, Jokake and Pasadena Oaks Life Properties, LLC ("Owner" or "Obligee") entered into a written construction agreement ("Agreement") in connection with the work of improvement known as the Las Encinas Psychiatric Hospital in Pasadena, California ("Project"). (Brown Decl., ¶ 10)

In connection with its work on the Project, Jokake requested that Travelers issue payment and performance bonds for the Project. (Brown Decl., ¶ 11) In reliance upon the terms of the GAI, on or about June 6, 2017, Travelers issued a performance bond and payment bond, bond number 106738868, in the respective amounts of $33,822,581.00 (the "Bonds"). (Brown Decl., ¶ 12, Ex. B)

### B. Jokake's Termination and Claims on the Bonds

On or about March 14, 2022, Owner declared a default, terminated Jokake from the Project and filed a claim on the performance bond. (Brown Decl., ¶ 13) Pursuant to Travelers' obligations under the performance bond, Travelers commenced its investigation of Owner's claim. (Brown Decl., ¶ 14)

In addition to Owner's claim on the performance bond, Travelers received numerous claims on the payment bond by various subcontractors of Jokake who performed work on the Project but claimed to be unpaid by Jokake. (Brown Decl., ¶ 14) Travelers immediately began investigating and resolving the payment bond claims. (*Id.*)

### C. First Collateral Demand

On or about July 7, 2022, pursuant to the terms of the GAI, Travelers demanded that Jokake (a) indemnify Travelers in the then-incurred amount of $224,531.22 and (b) post collateral in the amount of $11,480,928.21 to cover

anticipated future losses on the Bonds with a reservation of rights to increase the demand as additional facts become known ("First Collateral Demand Letter"). (Brown Decl., ¶ 15, Ex. C)

In response to the First Collateral Demand Letter, Jokake paid Travelers the indemnity amount of $224,531.22, but failed to post any collateral for future anticipated losses. (Brown Decl., ¶ 16) Jokake's failure to collateralize Travelers was a rbeach of the GAI.

### D. Takeover and Completion Agreements

On November 1, 2022, Travelers and Owner entered into a written agreement entitled "Takeover Agreement" wherein Travelers agreed to complete the remaining work on the Project in exchange for payment under the Takeover Agreement with a full reservation of rights. (Brown Decl., ¶ 17) Travelers thereafter retained a completion contractor to perform the remaining work on the Project and entered into a Completion Agreement for same ("Completion Agreement"). (Brown Decl., ¶ 18)

### E. Second Collateral Demand

On or about January 9, 2023, pursuant to the GAI, Travelers sent a second collateral demand letter to Jokake ("Second Collateral Demand") demanding indemnity in the amount of $1,092,217.13 for additional paid-to-date investigative expenses, attorneys and other professional fees, payment bond claims, and performance bond claims incurred by Travelers subsequent to the First Collateral Demand Letter. (Brown Decl., ¶ 19, Ex. D) The Second Collateral Demand Letter further demanded that Jokake post collateral (then in the amount of $19,864,316.80) to cover anticipated losses on the Bonds. (*Id*.)

To date, Jokake has failed and continues to fail to comply with all of Travelers' demands as set forth in the First Collateral Demand Letter and Second Collateral Demand Letter and has not posted collateral in any amount. (Brown

Decl., ¶ 20). Jokake's failure to indemnify and collateralize Travelers is a breach of the GAI.

### F. Status of Project Completion

Since entering into the Completion Agreement, Travelers' completion contractor has discovered both design errors and defects in the prior construction work performed by Jokake and its subcontractors. (Brown Decl., ¶ 22; Declaration of Steven Padula ("Padula Decl."), ¶ 16) Travelers has engaged experts to review specific areas of the Project, including, but not limited to the HVAC ductwork, the roofing system and the building envelope façade. (Padula Decl. ¶ 16) Based on the reports provided by those experts, Abbott and Travelers' consultant, Sage Associates, estimate repair costs for those areas in excess of $1,191,000.00, $1,750,000.00 and $4,700,000.00, respectively. (Padula Decl. ¶¶ 17-19, Exs. G, H, I) To date, Travelers' estimates that it will cost roughly $29,350,356.93 to perform the remaining scope of work left on the Project, correct/repair defective or nonconforming work, and pay construction management fees. (Brown Decl., ¶ 23; Padula Decl., ¶¶ 11; 12, Ex. F; ¶ 13) Travelers asserts and maintains that the estimates provided in support of this Application and attached to the Declaration of Mr. Padula are or may be subject to the work product privilege. Travelers' provision of these estimates in no way limits or waives Travelers' right to assert the privilege at a later date in this action or any other proceeding, which right is expressly reserved herein.

The estimate is preliminary and may increase with the discovery of new defects and as design plans are implemented to correct the defective work. (Brown Decl., ¶ 23; Padula Decl., ¶ 14)

### G. Travelers' Actual and Anticipated Losses

To date, Travelers has incurred actual losses in the amount of $7,240,057.00 on the Bonds. (Brown Decl., ¶ 24). These incurred losses consists of costs and expenses for (1) investigating the claims on the Bonds; (2) payments to various

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT

WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.
ATTORNEYS AT LAW

payment bond claimants; (3) defending Travelers in subcontractor lawsuits filed in connection with the Project; (4) retaining outside counsel and consultants to assist with investigation and completion of the Project and defense of claims; (5) payments to Abbott for its work to date in completing the Project; and (6) enforcing Travelers rights under the GAI in the instant action. (Brown Decl., ¶ 24)

In addition to the above incurred losses, Travelers has significant anticipated, unliquidated losses. Travelers anticipates losses totaling $29,350,356.93 on the performance bond for completion of the Project, and believes this number is likely to grow as the completion of the Project moves forward. (Brown Decl., ¶ 23; Padula Decl., ¶ 14)

Travelers anticipates total losses on the payment bond of $3,200,000.00 for claims made by project subcontractors. (Brown Decl., ¶ 25).

Additionally, Travelers anticipates incurring losses in the amount of $2,999,000.00 for counsel and consultant expenses in handling the various bond claims and overseeing the completion of the Project. (Brown Decl., ¶¶ 26, 30).

Finally, Travelers anticipates recovering some amounts from the Project Owner and subcontractors, the exact amount of which is unknown at this time. (Brown Decl., ¶ 27)

In sum, Travelers anticipates total losses in an amount in excess of $31,000,000.00 in connection with the bonds issued for Jokake. (Brown Decl., ¶ 27). Notwithstanding this total anticipated loss figure, and in part to account for potential future recoveries, Travelers' seeks to obtain a Writ of Attachment in the lesser amount of $25,000,000.00 for purposes of present day collateral security. (Brown Decl., ¶ 27). The approximate $6,000,000.00 credit for potential future recoveries is a good faith estimate only. (*Id*.) Travelers does not admit, waive or limit potential future recoveries to a specified dollar amount, which will or may be decided in the future by a trier of fact according to the evidence presented by the affected parties. (*Id*.)

Travelers seeks the instant relief to secure its rights under the GAI and to attach Jokake's assets to ensure adequate relief when Travelers ultimately prevails at trial in this action.

### III. FEDERAL LAW AUTHORIZES THE USE OF PROVISIONAL REMEDIES THAT ARE PROVIDED FOR BY THE LAW OF THE STATE IN WHICH THE DISTRICT COURT IS LOCATED.

Federal law expressly authorizes the use of any provisional remedy that is available to a party under the laws of the state in which the District Court is located.

Rule 64 of the Federal Rules of Civil Procedure provides:

> (a) At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies.
> (b) **The remedies available under this rule include the following […] attachment […] and other corresponding or equivalent remedies** (Emphasis added.)

Accordingly, federal courts generally must apply the provisional remedy law of the state wherein they are situated. (*Granny Goose Foods, Inc. v Brotherhood of Teamsters and Auto Truck Drivers Local No. 70*, (1974) 415 U.S. 423, 436-437; *Reebok Int'l Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552 (9th Cir. 1992)) Thus, the provisional remedies available under California law are applicable in this action.

Under California law, Travelers may apply for a Right to Attach Order for Issuance of a Writ of Attachment. CCP §484.010 provides the following:

> Upon the filing of the complaint or at any time thereafter, the plaintiff may apply pursuant to this article for a right to attach order and a writ of attachment by filing an application for the order and writ with the court in which the action is brought.

(CAL. CIV. PROC. §484.010; *Lorber Industries of Calif. v. Turbulence, Inc.* (1985) 175 Cal.App.3d 532, 535.) Therefore, Travelers may apply for a writ of

attachment against Jokake in this action.

## IV. TRAVELERS IS ENTITLED TO OBTAIN THE RIGHT TO ATTACH ORDER AND A WRIT OF ATTACHMENT AGAINST JOKAKE

The moving party must also establish the normal requirements for issuance of a right to attach order and writ of attachment. *See* CAL.CIV.PROC. §485.210(b); *Western Steel & Ship Repair v. RMI, Inc.*, (1986) 176 Cal.App.3d 1108, 1113. Code of Civil Procedure Section 484.090 provides that a court shall issue a right to attach order upon showing of the following: (1) the claim upon which the attachment is based is one upon which an attachment may be issued; (2) the plaintiff has established the probable validity of the claim upon which the attachment is based; (3) the attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based; and (4) the amount to be secured by the attachment is greater than zero. Code Civ. Proc. § 484.090. As will be shown below, Travelers satisfies all the requirements for this Court to properly issue the requested relief.

### A. The Claim Upon Which Travelers Seeks Attachment Is Based Upon One For Which An Attachment May Be Issued

Travelers seeks this attachment to secure recovery on a claim upon which this Court may issue an attachment. Code Civ. Proc. § 483.010(a) generally defines the claims upon which an attachment may issue as those that are for a fixed or readily ascertainable amount of money not less than $500.00 (exclusive of costs, interest, and attorney's fees) and based upon an express or implied contract. Further, the claim upon which an attachment may issue must be an unsecured commercial claim. Code Civ. Proc. § 483.010(b), (c).

#### 1. Travelers' Claim Is A Claim For A Fixed Amount Of Money Greater Than $500 That Is Based On An Express Contract

Travelers' claim is for a fixed and readily ascertainable amount of money exceeding $500.00 and based upon an express contract. Travelers' claim is

13

currently in excess of $31,000,000.00, which is the total sum of Travelers' estimated exposure to date. Notwithstanding, as mentioned above, Travelers is currently seeking Right to Attach Order and Writ of Attachment for the total amount of $25,000,000.00. This claim is based on Jokake's contractual obligations in the GAI, which is a clear and unambiguous written contract. Code Civ. Proc. § 483.010(a).

### 2. Travelers' Claim Is An Unsecured Commercial Claim

Travelers' claim is an unsecured commercial claim. Pursuant to CCP §483.010 (b), "[a]n attachment may not be issued on a claim which is secured by any interest in real property arising from agreement, statute, or other rule of law (including any mortgage or deed of trust of realty and any statutory, common law, or equitable lien on real property, but excluding any security interest in fixtures subject to Division 9 (commencing with Section 9101) of the Commercial Code)." (Code Civ. Proc. § 483.010(b)) Travelers' claim is not secured by an interest in real property.

Here, Travelers' claim against Jokake is unsecured. Travelers is not seeking to attach any secured assets duplicative of that already secured by any security interest. (Brown Decl., ¶ 32) Furthermore, Travelers' claim is not secured by any interest, whether lien or otherwise, in real property or deeds of trust. (Brown Decl., ¶ 33) Therefore, Travelers has met this requirement.

### B. Travelers Has Established The Probably Validity Of The Claim Upon Which The Attachment Is Based

By the evidence presented in support of this Application, Travelers has established the probable validity of the claim against Jokake under the GAI. Probable validity exists when "it is more likely than not that the plaintiff will obtain a judgment against the Defendants on that claim." Code Civ. Proc. § 481.190.

### 1. **It Is More Likely That Not That Travelers Will Obtain A Judgment Against Jokake On Its Claim**

Under California law, a written indemnity agreement is fully enforceable and should be "construed like any other contract with a view to determining the actual intention of the parties; no artificial rules apply." *Fidelity and Deposit Co. v. Whitson* (1960) 187 Cal.App.2d 751, 756; *Amwest Surety Ins. Co. v. Patriot Homes, Inc.* (2005) 135 Cal.App.4th 82. Indemnity agreements are routinely enforced in favor of the surety. *Fidelity and Deposit Co., supra,* (1960) 187 Cal.App.2d 751, 756; *General Ins. Co. of America v. Howard Hampton, Inc.* (1960) 185 Cal.App.2d 426.

Thus, "[t]here can be no question but that a surety is entitled to stand upon the letter of his contract, and his undertaking is to be construed strictly in his favor." *Com'l Ins. Co. of Newark v. Pacific-Peru Constr. Corp.*, (9th Cir. 1977) 558 F.2d 948, 953; *Fidelity and Deposit Co., supra*, 187 Cal. App. 2d at 756; *Amwest Surety Ins. Co., supra*, 135 Cal. App. 4th at 87; *Safeco Ins. Co. of America v. Schwab*, (9th Cir. 1984) 739 F.2d 431, 433. California and federal law provide for strict enforcement of surety indemnity agreements as a necessary element of the surety-indemnitor relationship, and the surety industry altogether. *General Insur. Co. v. Singleton*, (1974) 40 Cal. App. 3d 439, 443.

*Safeco Ins. Co. of America v. Schwab*, (9th Cir. 1984) 739 F.2d 431, is directly on point. In *Schwab*, the surety sought specific enforcement of the collateral security provision contained in an indemnity agreement prior to surety's payment of any claim on the subject bond. The Ninth Circuit held that the surety was entitled to the collateral requested pursuant to the terms of the indemnity agreement as soon as a demand has been made on the bond and before the surety is even called to experience a loss. The Court explained: "If a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced." *Id*. at 433.

Here, Travelers filed the instant action against Jokake to enforce the contractual obligations under the GAI. The GAI was voluntarily entered into by the Jokake as consideration for Travelers' issuance of bonds, including the Bonds in connection with the Project. The GAI unambiguously required Jokake to provide collateral and indemnify Travelers upon demand for Travelers' losses and potential losses incurred in connection with the Bonds. In fact, the GAI explicitly states that Jokake must deposit "an amount as determined by [Travelers]". Here, prior demands have been made by Travelers and the losses continue to increase. Travelers has determined to date that its potential losses will total in excess of $31,000,000.00.

Despite voluntarily undertaking these obligations contained in the GAI, and Travelers' demand therefor, Jokake has failed to post sufficient collateral. Such failure is a breach of the express terms of the GAI.

Because Jokake has failed to abide by the express terms of the GAI, it is more likely than not that Travelers will prevail on its claims against Jokake. Furthermore, Jokake has no viable defense to its indemnity obligations to Travelers. As such, Travelers has established the probable validity of its claim .

### 2. Travelers' Claim Is One On Which Attachment Is Proper

The relief sought herein by Travelers is supported by established California and federal law, which holds that an attachment is properly issued in an action brought by a surety against its indemnitors for reimbursement under an indemnity agreement. *General Insurance Co. of America v. Howard Hampton, supra*, 185 Cal. App. 2d 426 ("*Howard Hampton*") (upholding the issuance of an attachment order as to the surety's cause of action for collateral, finding that the indemnity agreement was "a contract for the direct payment of money"). "A California appellate court has authorized prejudgment attachments in suits for specific performance of collateral security provisions." *Safeco Ins. Co. of America, supra,* (9th Cir. 1984) 739 F.2d 431, 433.

In *Howard Hampton, supra*, 185 Cal. App. 2d 426, the California Court of Appeal upheld an order of attachment in favor of the surety plaintiff and against the indemnitors. In *Howard Hampton*, the surety issued bonds on behalf of a building contractor in consideration for the execution of indemnity agreements. The contractor allegedly defaulted on the underlying contract, causing the project owner to assert a claim against the performance bond. *Id*. at 428. The surety filed a lawsuit against its indemnitors seeking indemnity and collateral as well as its attorneys' fees under the relevant indemnity agreements. The court issued an attachment order against the indemnitors in favor of the surety to enforce the collateral obligation in the indemnity agreements finding that the surety's claim for collateral under the indemnity agreements was a "contract for the direct payment of money." *Id*.

As further set forth in *Howard Hampton*, prior judicial determination of the surety's duty to incur a loss is *not* required for attachment or to specifically enforce the collateral security provisions of an indemnity agreement. *Id*. Indeed, courts in California have long held that a surety is not required to bring suit or obtain a judgment to establish the liability of the principal for a surety to recover under an indemnity agreement. *See Whitson, supra*, 187 Cal. App. 2d at 757.

Here, like the surety in *Howard Hampton*, Travelers has filed the instant lawsuit against Jokake, seeking indemnity and collateral as well as its attorneys' fees under the GAI. (Brown Decl., ¶ 28) The GAI unambiguously imposes the duty on Jokake to provide cash and/or collateral upon demand by Travelers. Travelers currently has exposure via numerous claims on the Bonds by the Owner and Project subcontractors yet Jokake has failed to provide collateral or fully indemnify Travelers in breach of the GAI. (Brown Decl., ¶ 20) Accordingly, an attachment order against Jokake in favor of Travelers is proper to enforce the collateral obligations in the GAI.

### 3. Attachment Is Proper Under The Doctrine of *Quia Timet*

In addition to the cases discussed above, authority for the pre-judgment remedy of attachment can be found in the case law supporting the doctrine of *quia timet* ("because he fears"). *Quia timet* is an action for equitable relief against an anticipated injury which plaintiff legitimately fears and which cannot be avoided by the present action of law. *Escrow Agents' Fidelity Corp. v. Superior Court*, (1992) 4 Cal. App. 4th 491, 494. *Quia timet* is applied to prevent wrongs or anticipated mischief. *Id*. A party requests such aid from the court when it fears some future probable injury to his rights or interests. *Id*.

In *Escrow Agents'*, the court remarked, the *quia timet* remedy is especially suited to surety cases, explaining that:

> Although a surety may file an action at law to compel its principal to perform the obligation on a bond when due (Civil Code Section 2846), the fact that it may eventually obtain a judgment against the principal is of little comfort to the surety if, in the interim, **the principal has absconded with the very funds which could have been used to satisfy the bond.** Quia timet allows the surety to prevent the principal from dissipating those funds if the surety knows it will be called upon "to pay the debt or perform the obligation" on the bond, suspects that the principal has some or all of the necessary funds to do so, and **fears that the principal may abscond with those funds**. *Id*. at 495 (emphasis added).

Although the court in *Escrow Agents'* was not called upon to issue a writ of attachment pursuant to the doctrine of *quia timet*, the court stated in dicta that attachment would be a possible statutory remedy for a surety under the same rationale. (*Id*.) As in *Escrow Agents'*, here, Travelers, the surety, reasonably fears that Jokake will abscond with considerable funds which could be used to satisfy potential losses incurred by Travelers. (Brown Decl., ¶ 31) As recognized by the doctrine of *quia timet*, this would result in irreparable injury to Travelers. *Escrow Agents'*, 4 Cal. App. 4th at 494.

## C. The Attachment Is Not Sought For A Purpose Other Than The Recovery On The Claim Upon Which The Attachment Is Based

Travelers seeks attachment for no purpose other than the recovery on the claim upon which the attachment is based. Code Civ. Proc. § 484.020(c); (Brown Decl., ¶ 35)

Travelers seeks a writ of attachment of the identifiable, applicable assets of Jokake to preserve the status quo so that no assets may be dissipated or transferred and to ensure that there is adequate security and that funds will be available to satisfy Travelers' inevitable judgment against Jokake. (Brown Decl., ¶ 36)

## D. Travelers' Claim Is For An Amount Greater Than Zero

Travelers' claim is for a writ of attachment in an amount greater than zero against Jokake's non-exempt property as listed in Attachment "A" to the Application filed concurrently herewith. (Brown Decl., ¶ 29); *see* Code Civ. Proc. § 484.020(c). The total amount of loss Travelers anticipates to incur is in excess of $31,000,000.00 and the amount sought to be attached is $25,000,000, both of which are an amount greater than zero, the minimum amount a court must find for the issuance of a right to attach order and writ of attachment pursuant to Section 484.090(a)(4) of the California Code of Civil Procedure.

## V. THE PROPERTY UPON WHICH TRAVELERS REQUESTS ATTACHMENT IS PROPERLY ATTACHABLE

Travelers seeks attachment of the following against Jokake:

(a) any and all accounts receivable, and general intangibles arising out of their conduct of a trade, business or profession (Code Civ. Proc. § 488.080(a)(10));

(b) final money judgments arising out of their conduct of a trade, business or profession (Code Civ. Proc. § 488.080(a)(11));

(c) a lien in any money judgment or settlement proceeds otherwise payable to Jokake, in any pending court case, arbitration, mediation, hearing, administrative proceeding, or other proceeding (Code Civ. Proc. § 491.410);

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT**

WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.
ATTORNEYS AT LAW

(d) Jokake's' interests in real property (Code Civ. Proc. § 488.080(a)(1));

(e) motor vehicles, vessels, mobile homes or commercial coaches used as equipment of business (Code Civ. Proc. § 488.080(a)(5));

(f) money and deposit accounts (Code Civ. Proc. § 488.080(a)(8);

(g) equipment of business (Code Civ. Proc. § 488.080(a)(4);

(h) Jokake's rights, title, and interests in any monies due or to become due on any insurance policy;

(i) any and all business interests of Jokake;

(j) all corporate property of Jokake (Code Civ. Proc. § 487.010); and

(k) any and all other assets not subject to California exemptions (including California Code of Civil Procedure Section 487.020) within Jokake's possession, custody or control.

Therefore, the property upon which Travelers requests attachment is properly attachable.

## VI.  CONCLUSION

For the foregoing reasons, Travelers respectfully requests that the Court issue a right to attach order and order for writ of attachment with respect to Jokake's non-exempt real and personal property, as well as all other assets, including, but not limited to those assets listed on Attachment "A" to the application in the amount of $25,000,000.00.

Dated: September 28, 2023            Watt, Tieder, Hoffar & Fitzgerald, L.L.P.


                                     By: /s/ *Rebecca S. Glos*
                                         Rebecca S. Glos
                                         Kyle S. Case
                                         Attorneys for Plaintiff
                                         Travelers Casualty and Surety
                                         Company of America

13240405.3 103124.00070